**SHOPPING CENTERS OF GREATER CINCINNATI, INC., an Ohio Corporation, Plaintiff, v. CINCINNATI (City), a Municipal Corporation, Defendant.**

Common Pleas Court, Hamilton County.

No. A-158065. Decided August 27, 1958.

' C. R. Beirne, Jerome Goldman, for plaintiff.
James W. Farrell, Jr., City Solicitor, William A. McClain, Asst. Solicitor, for defendant.

## OPINION

By WEBER, J.:

The plaintiff is the owner of property described in the petition located generally on the east side of Paxton Avenue and 200 feet north of Wasson Road in the Hyde Park area of the City of Cincinnati. Under a comprehensive zoning ordinance enacted in 1924 said property was placed in Residence Zone B and is still so zoned.

The plaintiff contends that said Zoning Ordinance, as applied to said property, is invalid, the same being unreasonable, arbitrary and confiscatory, and deprives the plaintiff of the use of its property without due process of law, contrary to the provisions of **Article I, Section 19, Ohio Constitution,** and the provisions of the Fourteenth Amendment of the United States.

The plaintiff prays that the Court enter a declaratory judgment, declaring that the aforesaid ordinance, insofar as it purports to restrict said property to uses other than residential purposes as therein contained, is invalid and cannot be lawfully enforced against the plaintiff.

There is no question before the Court as to what uses other than those permitted by said Zone B, may be made of the property. The sole question is whether the restriction of the property to the residential uses permitted by said Zone B is unreasonable, arbitrary and confiscatory, in violation of said constitutional provisions. The question is presented to the Court on the pleadings, the evidence, including numerous exhibits showing the topography of the property, the development of the surrounding territory and various changes from Zone B Residential use; also oral arguments and briefs.

The property contains approximately 16 acres. Before being assembled into one ownership a few years ago, it consisted of three parcels. The property is cut through from north to south by ravines which divide it into four parts. The property has never been developed. Over the years its sole use has been as a dump; the city, with permission of the then owners, used it as a public dump for six years. The gulley immediately next to Paxton Avenue is 32 feet deep and is filled with ashes and miscellaneous waste and refuse. In any development a fill of almost fifty per cent of the entire tract would be required, varying from a few feet to 32 feet in depth.

The property in this area both before and after 1924 has been intensively developed for some useful purpose, except the property described in the petition, although a number of attempts were made to develop it. For a great many years the separate ownership of the original three parcels remained the same, although the owners were

willing and anxious to sell. One of said parcels was forfeited to the State for delinquent taxes and sold by the State.

Several changes have been made in the permitted uses of land in the immediate vicinity and each change has been a liberalization of the original use. One such change was made with respect to the property which adjoins the plaintiff's property on the south and runs about 200 feet to the north line of Wasson Road; said property was originally in residence B zone and was changed to an industrial zone and has since been used for industrial purposes.

The Court deems it unnecessary to refer specifically to the cases cited in the briefs. The legal principles which must guide the Court are clearly set forth in the following quotations from the case of Nectow v. City of Cambridge et al, 277 U. S. 183.

Syllabus.

"The inclusion of private land in a residential district under a zoning ordinance, with resulting inhibition of its use for business and industrial buildings to the serious damage of the owner, violates the Fourteenth Amendment if the health, safety, convenience or general welfare of the part of the city' affected will not be promoted thereby."

At page 187:

"It is made pretty clear that because of the industrial and railroad purposes to which the immediately adjoining lands to the south and east have been devoted and for which they are zoned, the locus is of comparatively little value for the limited uses permitted by the ordinance."

At page 188:

"* * * that the health, safety, convenience and general welfare of the inhabitants of the part of the city affected will not be promoted by the disposition made by the ordinance of the locus in question. * * * That the invasion of the property of plaintiff in error was serious and highly injurious is clearly established; and, since a necessary basis for the support of that invasion is wanting, the action of the zoning authorities comes within the ban of the Fourteenth Amendment and cannot be sustained."

It is also well settled that zoning is primarily a legislative function, involving political questions, and not a judicial function. There is a prima facie presumption that the legislative classification is valid, and if such classification is thoroughly debatable the Court should not inter-to it and further that such classification of the particular property is fere with the legislative judgment. Consequently, the burden is upon the plaintiff to prove by a preponderance of the evidence that the classification as it relates to the particular property causes serious damage not necessary for the promotion of the health, safety, morals, convenience or general welfare of the inhabitants of the part of the city affected.

In the year 19__ Residence Zone B was amended so as to permit so-called row houses or garden type housing. The evidence is voluminous and much of it is with reference to the adaptability of the plaintiff's property for that type of development. The plaintiff's witnesses testified that it was not economically feasible to develop the property for

any of the uses permitted by Residence B Zone. The witnesses for the City testified to the contrary. On the basis of this testimony the opinion of the Court is that the plaintiff has sustained the burden of proof on this phase of the question. But if it be assumed, as contended by the defendant, that this conflicting oral testimony makes the question of the adaptability of the property to the permitted uses thoroughly debatable, such testimony must be considered in connection with another indisputable fact. The property has never been developed; its only use has been for a dump. Although this fact alone would not be decisive, it affords very strong confirmation of the testimony of the plaintiff's witnesses that it is not economically feasible to develop the property for the uses permitted by its present zoning.

Considering all the evidence on this point, the Court is of the opinion that the plaintiff has sustained the burden of proof that the present zoning of this particular property is causing "serious damage" to it and is "highly injurious" to the property rights of the plaintiff.

Another phase of the question is whether the application of Residence Zone B to this particular property is necessary to promote the health, safety, morals, convenience or general welfare of the inhabitants of the part of the City affected. On this point Norman Gordon, principal City Planner from July 1949 to July 1956, testified "there is not a single reason, encompassed in the police power purposes of public health, safety, morals and general welfare to be served in retaining present zoning."

Mr. Stevens, now Director of City Planning, principally on the basis that any other use would draw additional traffic on Paxton Avenue and also would devalue neighborhood property, gave a contrary opinion. The credit to be attached to his opinion is somewhat weakened by his admission that on a previous occasion he gave a somewhat different opinion. However, assuming that the testimony of these two witnesses is entitled to equal credit, the City contends that their conflicting testimony makes this phase of the question thoroughly debatable. But here again the Court must weight the oral testimony of these witnesses in connection with an indisputable fact. The property running on Wasson Road and running north about 200 feet to the south line of the plaintiff's property was originally in the same zone as the plaintiff's property. It was later placed in an industrial zone and has since been used for industrial purposes. This action is a clear determination and declaration by the legislative authority of the City that retention in residence Zone B of property located as is the plaintiff's property is not necessary for the promotion of health, etc., of the inhabitants of that locality. Now, after the City has authorized by a change of zoning industrial uses on property adjoining plaintiff's property, the conclusion is irresistible that such necessity is lacking with reference to the plaintiff's property.

The Court holds that restricting the property described in the petition to Residence B Zone is unreasonable, arbitrary and confiscatory and that the application of said zoning to the plaintiff's property is not necessary to promote the health, safety, morals, convenience or general welfare of the iinhabitants of the part of the City affected and that said ordinance with respect to the plaintiff's property is invalid and in

violation of the provisions of the Ohio Constitution and the Constitution of the United States.

**SHOPPING CENTERS OF GREATER CINCINNATI, INC., Plaintiff, v. CINCINNATI (City), Defendant.**

No. A-158065.  Decided November 14, 1958.

**OPINION**

By WEBER, J.:

This matter is before the Court upon a motion for a new trial. Two reasons for the granting of the motion were presented in the argument.

One, that the declaratory judgment action was improper because "no judgment rendered will terminate the controversy or remove the uncertainty" as required by §2721.06 R. C.

Sec. 2721.03 R. C., provides:

"Any person interested * * * or whose rights, status, or other legal relations are affected by * * * a municipal ordinance, may have determined the question of construction or validity * * * of such ordinance * * * and obtain a declaration of rights, status or other legal relations thereunder."

The petition states that the plaintiff's rights, status and legal relations are affected by said ordinances (which were previously referred to and which restricted the plaintiff's property to the uses permitted by said residence Zone B ordinances) and is entitled to a determination of the construction and validity of such ordinances as applied to the plaintiff's property. The prayer asks for a declaration that the aforesaid ordinances, insofar as they purport to restrict plaintiff's use of said property to exclude uses other than residential purposes as therein contained, are invalid. In addition to a general denial the answer contains a specific denial, in an affirmative form, that said ordinances, as applied to the plaintiff's property, are in all respects valid and constitutional and prays for a judgment declaring said ordinances valid and constitutional.

The principal question in the case was whether said ordinances were invalid under the constitution of Ohio and the constitution of the United

States. Almost all of the evidence was directed to that issue. The case was submitted on that issue, and no other issue was raised by motion or otherwise at any time before the judgment entry was placed on record.

The opinion and judgment entry declared said ordinances unconstitutional insofar as they restrict the use of plaintiff's property to Zone B residential purposes. Said decree terminates the specific controvery and removes all uncertainty in regard to it. The power of the Court is limited to a declaration of pre-existing relations and may not create secondary and new legal relations. The only existing legal relations are those created by the present ordinances. See comment, §2721.02 R. C.

The second point argued is that the petition alleged that after exhausting all legislative and administrative remedies available to it, the plaintiff is still unable to obtain permission from the defendant to put certain land to any reasonable use, and that the plaintiff failed to further allege what specific use was applied for and that there is· no proof that all procedural steps were taken to obtain permission for such use, such as a change of zoning or application for and refusal of a building permit.

The question of what specific use was desired to be made of the property was not in the case. A general demurrer was filed claiming that the petition did not state a cause of action because it did not state the specific use or uses intended· and which were refused. The demurrer was overruled for the reason that §2721.02 R. C., provides that a declaration of rights may be made "whether or not other relief is or could be obtained." The petition did state a cause of action when it sought a declaration as to the constitutionality of the ordinances involved.

The statement that all administrative procedures had been complied with, whether standing alone or accompanied with a reference to the specific uses intended, is mere surplusage and requires no proof in order to sustain the declaration that the ordinances are unconstitutional as applied to the plaintiff's ·property. Such procedures are conditions precedent and compliance therewith is required only when the purpose· of the suit is to obtain the benefits of the ordinance by compelling their enforcement. Such would be the ʼcase if the plaintiff brought a mandamus suit to compel the proper official to grant the benefits provided by the ordinances. In the instant case the plaintiff is not claiming that he is deprived of the benefits given him by the ordinance but that the enforcement of the provisions of the ordinance would deprive him of the benefits given him by the constitution. Compliance with such procedures is not necessary when the purpose of the suit is to resist enforcement of the provisions of the ordinances and the claim is that said provisions are invalid and unenforceable.

In the case of **Criterion Service. Inc. v. East Cleveland (C. A.), 55 Abs 90,** the plaintiff sought to enjoin enforcement of the provisions of the zoning ordinance. The court held:

"Syllabus 1—A plaintiff may seek injunctive relief against an ordinance which he claims to be unconstitutional and void without first complying with the administrative procedure provided by the ordinance."

Page 92;

"It is the claim of the plaintiff that the ordinance is unconstitutional and void as to its application to plaintiff's business and that, therefore, it cannot be compelled to show an attempt to comply with the provisions of the ordinance. * * * Cases where plaintiff is seeking to compel the city to afford the plaintiff the benefits of an ordinance are not in point."

See also **Henle v. City of Euclid, 97 Oh Ap 258, page 263,** where the Court approves the holding in the above case and applies the same rule, for the same reason, to a suit for a declaratory judgment that a zoning ordinance is invalid.

The motion for a new trial should be and is hereby overruled.