SIDWELL ET AL., BD. OF ELECTIONS, *v.* CLEPPER ET AL.,
BD. OF TRUSTEES.

[Cite as Sidwell v. Clepper (1970), 25 Ohio Misc. 104.]

(No. 39068—Decided October 8, 1970.)

Common Pleas Court of Clermont County.

*Mr. Robert Jones,* prosecuting attorney, for plaintiff.
*Mr. James Lothrop,* for petitioners on referendum petitions.

NICHOLS, J.  This is an action brought under the Declaratory Judgment Statute of the state of Ohio to ask instructions of the court to the Board of Elections of Clermont County.  The Declaratory Judgment Act in Ohio provides in substance in R. C. 2721.03 that the court may determine the questions of the construction or validity or constitutional provisions of various statutes, rules, ordinance, contract, franchise, but does not specifically provide for construction of zoning procedures; however, R. C. 2721.06 states that the court is not limited by the specific provisions of the former sections and provides that in any proceeding where declaratory relief is sought it may act where the judgment or decree will terminate the controversy or remove the uncertainty.  This section has been held to apply to zoning resolutions; *The Shopping Center of Greater Cincinnati* v. *Cincinnati,* 83 Ohio Law Abs. 552.

Certain facts are, for the purpose of this lawsuit agreed to; namely, that the original zoning resolution of Union Township was properly enacted and that the requirements for floor areas as are set out on page 19 of the zoning resolution, and being a part of Article XV, were in effect, prior to the action of the township zoning board and action of the township trustees.  The zoning board passed a resolution amending this section which is known as amendment No. 5, and is shown on the last page of the plaintiff's exhibit No. 3, which is various amendments offered to the resolution.

There is, seemingly, no dispute that Resolutions I and III were not adopted and that II and IV were adopted and approved by the township trustees at their meeting on May 5th and that at the same meeting, Mr. Clepper, one of the township trustees, moved to adopt the Amendment

No. 5 as written and that Mr. Fangman and Mr. True, the two other members of the board of trustees, did not vote to approve the amendment. This was done after a public hearing and thereafter petitions were circulated asking for a referendum on this matter. There is likewise no dispute that the referendum petitions were signed by a sufficient number of registered voters, being more than the 8% of the parties who voted in Union Township in the last election for governor. It is likewise agreed that the referendum petitions did not designate a committee to represent them under the provisions of R. C. 3519.02, and that the circulators were made a party to these proceedings.

The court set a hearing on this matter on October 8, 1970, which was seven days after the filing of the petition, which was filed on October 1. This was done for the purpose of having the matter determined prior to the next general election which takes place on November 3, 1970.

There are several legal questions involved in this matter. The court will first decide that under the provisions of R. C. 2721.06, it does have the authority to hear this matter under the provision of that section.

Basically, there are two questions involved so far as the validity of the petitions is concerned. In the case of *Markus* v. *Trumbull County Board of Elections*, 22 Ohio St. 2d 197, it was decided by the Supreme Court on May 27, 1970, however, not published until June 1, 1970 Ohio Bar. That case specifically held that the provisions of R. C. 3519.-01 *et seq.*, do not apply to referendums of zoning matters, and that basically 3519 applies only to statewide referendum. It is in this chapter that there is a provision for the appointment of a committee to represent the petitioners. The court, however, held that R. C. 3501.38 and 519.12 were applicable to referendums on zoning matters.

R. C. 3501.38 provides eight separate requirements for various petitions which would include the petition on referendum and zoning matter. Section (E) of that statute is the only one that is involved in this case. That provides in part, "Every petition paper shall bear the affidavit of the circulator that he witnessed the fixing of every signature,

that all signers were to the best of his knowledge and belief qualified to sign, and that every signature is to the best of his knowledge and belief the signature of the person whose signature it purports to be." The affidavit of the various referendum petitions includes almost word for word the provisions of that section of the statute. The petitions were all filed with the court and they are on a paper form, some type of copying machine, and on each of these referendum petitions, they were in two pages, stapled together, the first page containing the name of the circulator, and included the space for thirteen separate signatures. The second page included the copy of Amendment No. 5 and included the affidavit of the circulator. The question is raised whether or not in this form that "every petition paper shall bear the affidavit of the circulator." The question being raised is whether or not the affidavit should be on each of the two pages. The court will hold that that contention is not correct, that where a paper consisting of two or more pages, and stapled together, all constitute a petition paper. It could be 1, 2, 3, 4 or more pages, all stapled together, all having names or signatures on that, and the affidavit being placed on the last page. The court, therefore, will rule that the signature of the circulator was signed to each petition paper and is, therefore, in that respect valid.

R. C. 519.12 which the Supreme Court has held to be applicable to this type of procedure, sets out the time of filing these petitions and the number of signatures that are necessary, and in substance provides that the amendment to a zoning resolution to become effective in thirty days after the approval by the board of trustees unless there is presented to them a petition signed by 8% or more of those voting at the last general election for governor, requesting the board of trustees to submit the amendment to the electors of the area for approval or rejection at the next primary or general election. The statute further provides that the amendment for which a referendum has been requested shall not be placed into effect unless the majority of the vote cast on that issue is in favor of the amendment,

The petition in this case asks for declaratory judgment to determine the sufficiency of the language of the referendum petition, and asks whether or not it was sufficient to apprise the signers thereof as to the actual issues sworn to be submitted to the electorate in the coming election. In their argument they seemed to follow the 4th syllabus of the *Markus* case cited above, which states, "the text of the ballot statement resulting from a referendum petition must fairly and accurately present the question or issue to be tried in order to assure a free, intelligent and informed vote by the average citizen affected." The court feels that that same criterion should be followed in the wording of the referendum petitions.

In going over the petitions there are two specific matters contained in the petitions that deal on this subject. The first part is contained on the very first part of page 1 of the petition which reads as follows: "1. Now comes George Sidwell, Joe Remley, Edward Osborne and James Burger, the duly appointed, qualified and acting members of the Board of Elections of Clermont County, Ohio and say that the Board of Township Trustees of Union Township, Clermont County, Ohio, certified to the said Board of Elections, Clermont County, Ohio, referendum petitions requesting the submission to the electors of Union Township, the question of the adoption of Amendment No. 5 to the Union Township Zoning Regulations." On page 2 of each referendum petition there was an exact copy of the Amendment No. 5 to the zoning resolution.

Original zoning resolution was adopted in 1958 and as will be seen by the above quoted portion of the referendum petition, that Amendment No. 5 was an amendment changing and replacing the residential floor requirements as were contained in Article VV on page 19 of the Union Township Zoning Regulations. There was admitted in evidence this zoning resolution and on page 19 there was the existing requirement for residential floor area space. This had been in effect since 1958, and was a matter of public record in and for all residents of Union Township, and the court will rule that the signers of the petition had legal notice

of the terms and provisions of the existing Article XV and, therefore, all signing a petition to reject the amendment knew or had legal knowledge of the existing provisions of these requirements and could certainly easily ascertain any difference from the original requirements and those contained in the amendment.

The court will, therefore, rule that the referendum petition did fairly and accurately present to the signers thereof sufficient information for which to have a free, intelligent and informed signature thereon.

It will be noted in passing that the requirements on this petition are not spelled out in R. C. 519.12, that merely stating that the petition should request the board of trustees to submit the amendment to the electors of the area for approval or rejection in the next primary or general election, so the Code, itself, does not require an exacting form for these referendum petitions, but does feel it should be sufficient for the parties to understand what they are signing, and in view of the statement of each page of the petition, and in view of the exact copy of the proposed amendment, the court will rule that the petitions were sufficient and legal.

It will, therefore, be declared that the petitions for referendum on the submission of these questions to the voters of Union Township is adequate and that the Board of Elections should proceed to have ballots prepared and submitted to the voters of Union Township at the general election on November 3, 1970.

The final question before the court is that if it ruled that the Board of Elections should submit the question to the voters is the form of ballot prepared by the Board of Elections a proper one so as to comply with the standard set out in the 4th syllabus of the *Markus case* which has been referred to above, but the exact wording is as follows: "The text of a ballot statement resulting from a referendum petition must fairly and accurately present the question or issue to be decided in order to assure a free, intelligent and informed vote by the average citizen affected."

The statute itself is somewhat confusing in that it

provides that the amendment should not be adopted unless approved by a majority of the voters. That, of course, means that if submitted, the people who vote "yes" would be voting in favor of the amendment, and whereas the circulators of the petition for referendum do not desire to have the amendment carried, and this seemingly is contradictory to those that ask for a referendum in order to carry out their avowed purpose must vote "no" on the ballot. That, however, is a matter for the Legislature and the court can see no way to change this as the statute specifically says that the majority must vote in favor of the amendment.

The court has gone over the proposed ballot which has been prepared by the Board of Elections. Objection was made in arguments to the statement that the board of trustees approved the amendment whereas in reality two of the three members of the board were opposed to the amendment. This, however, is again a matter of the statute which provides that any action of the zoning commission shall be effective unless their recommendations are denied or modified by a unanimous vote of the board of trustees. This, of course, means that the board of trustees does have the final say in the adopton of the amendments to the zoning resolution, but further provides that in the event the zoning commission makes a recommendation they must follow it except by a unanimous vote to the contrary.

The court has gone over the proposed ballot submitted by the Board of Elections and that is primarily the responsibility of the board to place it on the ballot, and while the court might have made some little different wording in it, the court does feel that it meets all the requirements set out in the *Markus case*, and as it does set out in detail the matter actually before the voters; namely, the change in requirements of residential floor area, and states that the zoning commission would adopt this Amendment No. 5, and that it was presented to the township trustees following a public hearing and that the board of trustees did not unanimously reverse or modify the recommendations.

Therefore, the court will approve the form of ballot submitted by the Board of Elections and attached to the petition. Entry should be presented to the court based upon this decision forthwith.